IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID J. DERR,

               Plaintiff,                        12cv1030

                                               **ELECTRONICALLY FILED**

               v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

## MEMORANDUM OPINION

### I.      Introduction

Plaintiff David J. Derr ("Derr") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. The matter is presently before the Court on Cross-Motions for Summary Judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 10 & 12. For the reasons that follow, the Commissioner's Motion for Summary Judgment (*ECF No. 12*) will be granted, and Derr's Motion for Summary Judgment (*ECF No. 10*) will be denied.

### II.     Procedural History

Derr protectively applied for DIB and SSI benefits on February 26, 2009, alleging that he had become "disabled" beginning on July 15, 2008. R. 124, 129. Pennsylvania's Bureau of Disability Determination ("Bureau") denied the applications on October 16, 2009. R. 50-76. Derr responded on December 2, 2009, by requesting an administrative hearing. R. 77-78. On

February 7, 2010, a hearing was held in Mars, Pennsylvania, before Administrative Law Judge

("ALJ") John J. Porter.  R. 23-49.  Derr, who was represented by counsel, appeared and testified

at the hearing.  R. 26-46.  Fred A. Monaco, Ph.D. ("Monaco"), an impartial vocational expert,

also testified at the hearing.  R. 57-59.  In a decision dated March 24, 2011, the ALJ determined

that Derr was not "disabled" within the meaning of the Act.  R. 9-19.

On May 24, 2011, Derr sought administrative review of the ALJ's decision by filing a

request for review with the Appeals Council.  R. 7-8.  The Appeals Council denied the request

for review on June 8, 2012, thereby making the ALJ's decision the "final decision" of the

Commissioner in this case.  R. 1.  Derr commenced this action on July 24, 2012, seeking judicial

review of the Commissioner's decision.  ECF No. 1.  Derr and the Commissioner filed Cross-

Motions for Summary Judgment on November 30, 2012, and December 3, 2012, respectively.

ECF Nos. 10 & 12.  Those motions are the subject of this memorandum opinion.

## III.    Standard of Review

This Court's review is plenary with respect to all questions of law.  *Schaudeck v.*

*Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect

to factual issues, judicial review is limited to determining whether the Commissioner's decision

is "supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46

(3d Cir. 1994).  A United States District Court may not undertake a *de novo* review of the

Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v.*

*Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986).  Congress has clearly expressed its intention

that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Substantial evidence "does not

mean a large or considerable amount of evidence, but rather such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions.  He or she must make specific findings of fact.  *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).  The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence.  *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated

rule making authority, has promulgated a five-step sequential evaluation process for the purpose

of determining whether a claimant is "disabled" within the meaning of the Act.  The United

States Supreme Court has summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will
> not review the claim further. At the first step, the agency will find non-disability
> unless the claimant shows that he is not working at a "substantial gainful
> activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find
> non-disability unless the claimant shows that he has a "severe impairment,"
> defined as "any impairment or combination of impairments which significantly
> limits [the claimant's] physical or mental ability to do basic work activities." §§
> 404.1520(c), 416.920(c). At step three, the agency determines whether the
> impairment which enabled the claimant to survive step two is on the list of
> impairments presumed severe enough to render one disabled; if so, the claimant
> qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the
> list, the inquiry proceeds to step four, at which the SSA assesses whether the
> claimant can do his previous work; unless he shows that he cannot, he is
> determined not to be disabled. If the claimant survives the fourth stage, the fifth,
> and final, step requires the SSA to consider so-called "vocational factors" (the
> claimant's age, education, and past work experience), and to determine whether
> the claimant is capable of performing other jobs existing in significant numbers in
> the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).  Factual findings pertaining

to all steps of the sequential evaluation process are subject to judicial review under the

"substantial evidence" standard.  *McCrea v. Commissioner of Social Security*, 370 F.3d 357,

360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's

decision cannot be affirmed on a ground other than that actually relied upon by the agency in

making its decision.  In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194

(1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of
> administrative law. That rule is to the effect that a reviewing court, in dealing with
> a determination or judgment which an administrative agency alone is authorized
> to make, must judge the propriety of such action solely by the grounds invoked by
> the agency. If those grounds are inadequate or improper, the court is powerless to
> affirm the administrative action by substituting what it considers to be a more

adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context.  *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).  Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

**IV.     The ALJ's Decision**

In denying Derr's request for benefits, the ALJ determined that Derr did not have an impairment (or combination of impairments) that met or equaled the criteria of any impairment in the listing of impairments.  More specifically, he noted that Derr's mental impairments were the only impairments of record that could be reasonably considered for purposes of meeting or equaling a listed impairment.  R. 14.  Relying upon the medical evidence supplied by Dr. Uran, Dr. Croyle, and the progress notes of Derr's treating physician, Dr. Lockward[1], the ALJ found that Derr had "at worst, only moderate limitations of functioning for purposes of any of the Part 'B' criteria." R. 15.

The ALJ relied in part in Dr. Lockward's progress notes but not on Dr. Lockward's assessment of Derr's limitations as they related to his work capabilities because Derr failed to provide Dr. Lockward with "an accurate and reliable history as to his drug and alcohol abuse[.]" R. 15.

The ALJ explained that in order to satisfy the Part "B" criteria, Derr's mental impairments, taken singly or in combination, had to "result in at least two of the following:

---

[1] It is noted that the ALJ referred to Dr. Lockward as "Dr. Lockwood" throughout his written decision. However, it is clear to this Court from the context of the ALJ's decision, as well as the references the ALJ made to the exhibits which included the actual medical records, that the ALJ was referring to Dr. Lockward whenever he wrote "Dr. Lockwood."

marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration." R. 15. He defined "marked limitation" as "more than moderate but less than extreme." R. 15. He defined "repeated episodes of decompensation" as "three episodes within one year, or an average of once every 4 months, each lasting for at least 2 weeks." R. 15.

Insofar as Derr's activities of daily living, the ALJ found that he was moderately restricted. R. 15. With respect to social functioning, concentration, persistence, or pace, the ALJ noted that Derr had only moderate difficulties. R. 15. The ALJ found that Derr only experienced one to two episodes of decompensation. R.15. Thus, based on these findings, the ALJ concluded that the "paragraph B" criteria were not satisfied – meaning that Derr did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR § 404, Subpart P, Appendix 1. R. 14-15.

With regard to Derr's residual functional capacity, the ALJ concluded that Derr could "perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except that, during any given 8-hour work day, [Derr]" is additionally limited as follows: "[F]requently lift twenty pounds; sit for six hours; stand or walk for six hours; [Derr] needs a sit/stand option; [Derr] is limited to performing routine and repetitive work not performed in a fast-paced production environment; and [Derr] can have only occasional interaction with supervisors, co-workers, and the general public." R. 15. In reaching the conclusion about Derr's residual functional capacity, the ALJ first determined whether there was an underlying medically determinable mental impairment(s) – shown by medically accepted clinical and diagnostic techniques – which could produce Derr's pain or other symptoms. R. 15-16. The ALJ concluded, based on the medical

6

evidence presented, that Derr's medically determinable mental impairments could reasonably have caused his alleged symptoms.

However, once the ALJ made this determination, he was required to evaluate the intensity, persistence, and limiting effects of Derr's symptoms to determine the extent to which they limited his ability to function.  R. 16.  In this regard, the ALJ found that the intensity, persistence, and limiting effects of Derr's symptoms were not substantiated by the objective medical evidence.  R. 16.  Next, the ALJ considered Derr's credibility with respect to his statements concerning the intensity, persistence, and limiting effects of his symptoms, and found that Derr was not credible, "primarily due to the discrepancy between [Derr's] testimony, especially about his drug and alcohol history, and the objective medical evidence of record."  R. 16.

In rendering the factual findings and legal conclusions about Derr's residual function capacity, the ALJ described, in great detail, his reliance upon Derr's treating physician (Dr. Lockward). The ALJ specifically noted that following Derr's hospitalization from January 29 to February 3, 2009, for anxiety, panic, depression, and a history of substance abuse, Dr. Lockward became Derr's primary mental health specialist. R. 16.  The ALJ noted that Dr. Lockward's "extensive progress notes," which document the doctor's mental examinations of Derr all indicated that Derr was "not showing any significant abnormalities."  R. 16-17.  Thus, the ALJ determined that "construing the evidence in a light most favorable to [Derr] . . . he has had only moderate limitations and his mental functioning has been stable . . . ." R. 17.  The ALJ further found that Dr. Lockward's progress notes did not indicate that Derr had "any significant mental work-related limitation of functioning" and further found that the mental health, medical source statement Dr. Lockward completed – which made statements contrary to his own

7

contemporaneous findings set forth in his progress notes – to be "ambiguous, and as such, is all but without merit or probative value." R. 17.

The ALJ also considered medical evidence from Dr. Uran, who performed a "consultative psychological evaluation of [Derr]."  The ALJ noted that Dr. Uran determined that Derr's "mental capacity was diminished to the extent that, in relevant part, [Derr] has marked limitations dealing with work pressure and interacting with the public." R. 17.  Dr. Uran found that Derr had a GAF score of 55.  R. 17.  The ALJ noted that pursuant to the DSM-IV a GAF score of 55 placed Derr "at worst, [with] moderate, mental, work-related limitations of functioning . . ." which the ALJ found to be consistent with the overall, credible evidence of record.  R. 17.  Finally, the ALJ noted that the medical history Derr provided to Dr. Uran (*i.e.,* becoming depressed when he had to quit working to take care of family members) illustrates the situational nature of his mental problems.  R. 17.

The ALJ's finding that Derr's mental problems were/are situational is supported by the history provided to Dr. Uran, the consultative psychologist, and by Dr. Lockward's progress notes which clearly indicate that Derr was only seeing his treating physician on an "episodic" basis.  R. at 17.

The ALJ also noted that Dr. Croyle (the state agency psychologist) found that Derr had moderate limitations of functioning in activities of daily living; moderate limitations of functioning in maintaining social functions, as well as in his concentration, persistence and pace; and no episodes of decompensation.  R. 18.  The ALJ found Dr. Croyle to be credible.  R. 18.

With respect to Derr's testimony, the ALJ specifically found that Derr testified that he was not using drugs or alcohol "when he was hospitalized in January/March of 2009[,]" but the "medical evidence of record at that time" showed that Derr "was indeed engaging in alcohol and

drug abuse." R. 18.  Although the ALJ specifically noted that Derr's abuse of substances was not material to the ALJ's decision, it was relevant to the ALJ's decision that Derr was not credible at the hearing in this matter and with Dr. Lockward, thereby undermining the weight to be given to Dr. Lockward's opinions. R. 18.

Based on the progress notes of Dr. Lockward, as well as the GAF score derived by Dr. Uran, and the findings of Dr. Croyle, the ALJ determined that Derr, who was first hospitalized in January of 2009, and who had not been re-hospitalized since March of 2009, had remained "stable" enough "so as to have performed sustained work activity within the parameters of his residual functional capacity at all times relevant to [the ALJ's] decision." R. 18.

Finally the ALJ noted that the vocational expert opined that Derr could perform his past relevant work as a packer.  R. 19.  Furthermore, the ALJ found that even if Derr could not perform his past packer work, he could "nonetheless perform a substantial number of jobs in existence in the national economy" such as an abrasive machine operator, a bench assembler, and a machine feeder.  R. 19.  The ALJ found no credible evidence of record to support the hypothetical question that Derr would be absent from work every other day.  R. 19.

As a result of these findings and conclusions, the ALJ ultimately concluded that Derr had not been under a disability as defined by the Social Security Act from July 18, 2008, through the date of his decision (March 24, 2011).  R. 19.

## V.    Discussion

Although the Commissioner and Derr filed Cross-Motions for Summary Judgment, the sole issue before this Court is whether there is substantial evidence supporting the ALJ's decision that Derr was not disabled.

Derr contends the ALJ failed to properly consider medical evidence and improperly determined that Derr was not credible. Conversely, the Commissioner contends that substantial evidence of record supports the ALJ's decision, including the manner in which he weighed the medical evidence as well as Derr's credibility.

Because this Court is being asked to review the factual basis upon which the ALJ based his decision (which the Commissioner affirmed), judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). As noted above, this Court cannot undertake a *de novo* review of the Commissioner's decision, nor re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). The Court acknowledges that "the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

**A. The Medical Evidence**

Derr first contends that the ALJ incorrectly discredited Dr. Lockward's opinions/assessments when the ALJ found the doctor's progress notes incongruent with the doctor's opinions/assessments. Instead of pointing out how Dr. Lockward's progress notes (upon which the ALJ relied in concluding Derr was not entitled to benefits), in fact, substantiated Dr. Lockward's opinions concerning Derr's inability to function in a workplace setting, Derr argues that progress notes serve a different purpose than an opinion assessment. Although this Court agrees that a doctor's progress notes serve a different purpose than an evaluation, assessment, or opinion, a doctor's notes must still substantiate his or her evaluation, assessment or opinion.

Here, the ALJ found that Dr. Lockward's progress notes did not support the opinions set forth in his assessment.  Moreover, Dr. Lockward's progress notes were compatible with and/or consistent with the findings of Dr. Uran, a consultative psychologist, and Dr. Croyle, the state agency psychologist.  Thus, the Court finds that the ALJ did not err in giving greater weight to Dr. Lockward's progress notes and less weight (if any) to his assessment.

Next, Derr ascribes great weight to the ALJ's finding that his depression was "situational" and not long-standing.  Doc. no. 11, p. 7.  Although this Court notes that the ALJ stated in his decision that Derr's "mental problems, have been at worst, only situational[,]" this statement was made with respect to the history Derr himself provided to Dr. Uran.  The Court further notes that the ALJ's finding in this regard is bolstered by is review of the entire medical record which included Dr. Lockward's records which also indicate that Derr was only seen by Dr. Lockward – his treating physician – on an "episodic" basis.  Finally, this Court concludes that the ALJ's finding with respect to the situational or episodic nature of Derr's mental status is only one of the many medical factors the ALJ considered in reaching the conclusion that Derr had the residual functional capacity to perform light work with some additional limitations.

Next, Derr attempts to argue that during the hearing in this matter he testified that he suffered from anxiety attacks six months prior to his quitting the job he held for 15 years, and that he was fired from his last two jobs for missing work as a result of his emotional condition. Although this Court could address this argument in the next section of this Opinion concerning Derr's credibility, the Court notes at this juncture that Derr admitted to more than one medical doctor that he quit his job of 15 years because he had to provide care for ailing family members.

Additionally, Derr argues that the ALJ erred in finding his ability to work for 15 years was inconsistent with Dr. Lockward's assessment wherein Dr. Lockward opined that Derr had

poor ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, deal with stress in a usual work setting, and maintain concentration.  Doc. No. 11, p. 7-8.  However, this Court notes that the ALJ's opinion discounts Dr. Lockward's assessment (and the opinions contained therein) because Derr failed to provide Dr. Lockward with a complete history – especially concerning his history of alcohol and drug abuse – and because Dr. Lockward's progress notes, along with the GAF score Dr. Uran derived, do not support Dr. Lockward's assessment.  The Court thus finds that the ALJ's decision discounting Dr. Lockward's assessment of Derr is not predicated upon the ALJ's finding that the assessment is inconsistent with Derr's 15-year work history.

With respect to the amount of emphasis the ALJ placed upon Derr's failure to notify Dr. Lockward of his history of drug and alcohol abuse (see doc. no. 11, p. 10-11), Derr seems to believe that because he was not directly asked by his treating psychologist (Dr. Lockward) about his drug and alcohol history, he was under no obligation to disclose this information.  Ignoring the credibility problem Derr created for himself in failing to affirmatively disclose this information to his treating physician for a moment, the Court finds that the ALJ correctly noted that Derr's failure to affirmatively disclose this information caused Dr. Lockward to render an assessment replete with opinions predicated on incomplete information.  If the ALJ had found to the contrary, and determined that Dr. Lockward would have rendered the same exact opinions in his assessment if presented with Derr's complete medical mental history, would have been pure guesswork.

Finally, Derr contends that the ALJ erred when he found that Dr. Uran's assessment indicating that Derr had marked limitations was consistent with the ALJ's residual functional capacity determination.   Doc. no. 11, p. 11. However, as the Commissioner points out (see doc.

12

no. 13, p. 11), the ALJ did note that Dr. Uran assessed that Derr could understand, remember, and carry out simple instructions.  The law in this regard indicates that a person does not have marked limitations if he can sustain and persist at simple tasks but has difficulty with complicated tasks.  20 C.F.R. Pt. 404, Subpart P., App. 1, Pt. A, § 12.00(C)(3).  Given that the ALJ noted, and Derr does not dispute, that Dr. Uran determined that Derr's GAF score was 55, and given that a GAF score of 55 indicates only moderate limitation, the Court finds that the ALJ did not err as a matter of law when finding that Dr. Uran's assessment supported the ALJ's overall finding that Derr did not have marked limitations.

Accordingly, based on the above law and arguments presented by Derr and the Commissioner, the arguments advanced by Derr related to the medical evidence provide no basis for disturbing the ALJ's decision.

### B.  Derr's Credibility

Derr next suggests that the ALJ's decision (and the Commissioner's affirmance) was predicated upon the erroneous conclusion reached by the ALJ that Derr was not credible.  Derr claims that the ALJ's only reason for discounting his testimony was due to "his statements regarding his drug and alcohol usage." Doc. no. 11, p. 13-14.  Derr suggests that his statements concerning his drug and alcohol usage should be "deemed credible" because his usage "was not abusive or material during the relevant period of time."  Id.

It is important to note, as the Commissioner points out in his brief (see doc. no. 13, p. 14), that the ALJ found Derr to be not fully credible *in part* because he omitted his history of alcohol and drug abuse to Dr. Lockward, but also because Derr testified he quit working because of his mental condition, yet he told others (including Dr. Uran) that he quit working to take care of ailing relatives.  R. 17.  The Court also notes that the ALJ specifically found that Derr testified

that he was not using drugs or alcohol "when he was hospitalized in January/March of 2009" but the "medical evidence of record at that time" showed that Derr "was indeed engaging in alcohol and drug abuse." R. 18.

Finally, the Court also notes, and the Commissioner alludes to this as well, that the ALJ did not find Derr to be fully credible, because of all three of these transgressions, however, he did not find that Derr's drug and alcohol history was material to the decision.  Rather it is clear from the ALJ's opinion that Derr's failure to provide his complete mental history (which would have included his drug and alcohol use/abuse) could have affected Dr. Lockward's assessment of him.  In addition, because Derr testified at the hearing concerning his drug and alcohol use and this testimony was inconsistent with the information he provided to Sharon Hospital upon his admission in 2009, the ALJ had a sound basis to reject Derr's subjective testimony.  Thus, it is clear from the record in this case why the ALJ found Derr's testimony not to be fully credible. See, *Schaudeck v. Comm'r of Social Security*, 181 F.3d 429, 433 (3d Cir.1999) (An ALJ may reject a claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony.).

**VI.      Conclusion**

The Commissioner's "final decision" denying Derr's applications for DIB and SSI benefits are "supported by substantial evidence" and will be affirmed.  42 U.S.C. § 405(g). Derr's Motion for Summary Judgment (*ECF No. 10*) will be denied, and the Commissioner's Motion for Summary Judgment (*ECF No. 12*) will be granted.  An appropriate order will follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:      All counsel of record